UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| Heather M. P.[1], | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:19-CV-701-RLM-MGG |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, Heather M. P. ("Ms. P") seeks judicial review of the Social Security Commissioner's decision denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. On November 21, 2019, this matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b), and N.D. Ind. L.R. 72-1(b). For the reasons discussed below, the undersigned recommends that the decision of the Commissioner of the Social Security Administration ("SSA") be **REMANDED**.

**I.   OVERVIEW OF THE CASE**

Ms. P applied for DIB and SSI on April 26, 2015. In both applications, she alleged a disability onset date of September 6, 2014. Ms. P's applications were denied initially

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

on June 26, 2015, and upon reconsideration on August 12, 2015. Following a hearing on July 25, 2017, the Administrative Law Judge ("ALJ") issued a decision on August 29, 2018, which affirmed the Social Security Administration's denial of benefits. The ALJ found that Ms. P suffers from the following severe impairments: spinal disorders; obesity; depressive disorder; and a history of borderline intellectual functioning and/or a learning disorder. The ALJ also found that none of Ms. P's severe impairments, nor any combination of her impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Further, the ALJ found that Ms. P had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a)[2] with certain additional limitations. In view of Ms. P's RFC, the ALJ found that Ms. P was unable to perform past relevant work. However, the ALJ concluded, based on the testimony of the vocational expert, that Ms. P had the ability to meet the requirements for employment as an order clerk, a charge account clerk, or a sorter as those jobs are defined by the Dictionary of Occupational Titles. Based upon these findings, the ALJ denied Ms. P's claims for DIB and SSI.

## II.   DISABILITY STANDARD

In order to qualify for DIB or SSI, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or

---

[2] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Report and Recommendation will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

2

mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for DIB and SSI under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is capable of performing other work. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at every step except the fifth. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III. STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also bene understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see also Summers v. Berryhill,* 864 F.3d 523, 526 (7th Cir. 2017). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not

reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

An ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ is not permitted to "cherry-pick" facts from the record to support a finding of non-disability. *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010). Further, an ALJ may not ignore an entire line of evidence contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 888 (7th Cir. 2001). The ALJ is not required to address every piece of evidence in the record, but he must at least provide a glimpse into the reasoning behind his analysis to build the requisite "logical bridge" from the evidence to his conclusions. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008).

IV. **ANALYSIS**

   A. **Issues for Review**

In challenging the ALJ's decision, Ms. P points out three alleged errors in the ALJ's decision to deny Ms. P of DIB and SSI. First, Ms. P argues that the Commissioner failed to properly consider the opinions of Ms. P's treating physicians Dr. Ungar-Sargon and Dr. Popli, as well as the medical interrogatory answers of impartial medical expert Dr. Devere. Second, Ms. P argues that the ALJ erred in considering her subjective

4

symptoms. Finally, Ms. P asserts that the ALJ erred in her Step Five determination. Each issue will be addressed in turn.

  **B.  Errors in Weighing Dr. Ungar-Sargon's Opinion**

In crafting an RFC, the ALJ must consider "all of the relevant medical and other evidence" in the record. 20 C.F.R. § 404.1545(a)(3); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). Here, the ALJ supported her RFC analysis by presenting a summary of Ms. P's medical records, including a medical source statement dated July 19, 2017 from Ms. P's treating physician, Dr. Julian Ungar-Sargon. The ALJ summarized Dr. Ungar-Sargon's medical source statement as follows:

> [Dr. Ungar-Sargon] opined that the claimant can never lift or carry over five pounds, she would need to lie down for one hour every workday, that she is able to sit for no more than one hour and stand and walk for less than one hour in an eight hour workday, that she has significant manipulative limitations to her bilateral hands, and that she would be off task 30% of the workday and miss more than five days of work per month.

[DE 13 at 41-42].

The ALJ then afforded "little to no weight" to Dr. Ungar-Sargon's opinion, finding that the "clinical record is conspicuously absent objective clinical findings to support such extreme limitations, and little to no clinical evidence as to manipulative difficulties." [DE 13 at 41-42]. The ALJ also found that "statements regarding her time off task and missed days of work are no more than conjecture." [*Id.*].

Ms. P notes that the applicable regulations require the ALJ to give "controlling weight" to treating doctors' opinions if they are well supported by clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence.

20 C.F.R. § 404.1527; SSR 96-2P; *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009). As such, Ms. P contends that the ALJ erred by failing to properly consider the mandatory regulatory factors before Dr. Ungar-Sargon's treating source opinion and is unsupported by sound reasoning.

ALJs are required to consider every medical opinion in a claimant's records. 20 C.F.R. §404.1527(c). A medical opinion from a treating source is generally given more weight because of the medical professional's longitudinal experience with the claimant's impairments and treatment. *Id.* § 404.1527(c)(2). A treating source opinion is given controlling weight unless the ALJ finds that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is inconsistent with "the other substantial evidence" in the case record. *Id.* Where a treating source opinion is not given controlling weight, the ALJ must consider the examining relationship, treatment relationship, length of relationship and frequency of visits, and nature and extent of the relationship to explain why the opinion is discounted. *Id.* § 404.1527(c); *see also Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). Ms. P contends that the ALJ did not indicate if or how she considered the Section 1527(c) factors in assigning little to no weight to Dr. Ungar-Sargon's opinion.

The ALJ failed to discuss any of the regulatory factors as described in 20 C.F.R. § 404.1527(c). The ALJ fails to discuss specifically which of Dr. Ungar-Sargon's opinions she finds to be extreme, and she fails to explain what evidence in the record contradicts the opinion. An ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez,* 336 F.3d at 539. The ALJ must articulate her

6

decision in a manner that allows the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered all the important evidence in the records. *Scott*, 297 F.3d at 595.

Specifically, the ALJ failed to acknowledge Dr. Ungar-Sargon's specialty as a neurology and pain management specialist, as well as his treating history with Ms. P. [DE 13 at 1313, 1447]. The ALJ also failed to discuss the medical evidence in detail and whether Dr. Ungar-Sargon's opinion is supported or contradicted by medical evidence and other opinions in the record. Dr. Ungar-Sargon began treating Ms. P monthly in 2016, and he sent her for EEGs, EMGs, MRIs, and he reviewed them in order to provide her with medication management and injections for her pain. Ms. P regularly presented with tenderness in her cervical, lumbar, and thoracic spine, as well as in her sacroiliac joints. [DE 13 at 1335, 134-45, 1354, 1362, 1369, 1376]. He also noted her complaints of headaches, which Ms. P reported experiencing at least once a month, sometimes weekly. [DE 13 at 1345, 1350, 1358, 1362, 1369].

In his opinion, Dr. Ungar-Sargon opined that Ms. P could rarely lift or carry less than 5 pounds and could never lift or carry more than five pounds. [DE 13 at 1447]. He opined that Ms. P would need to lie down for fifteen minutes periodically throughout the day due to fatigue and pain, but that she would need to lie down for less than an hour during an 8-hour work day. [DE 13 at 1448]. He opined that she would need unscheduled breaks, could only sit for about an hour during an 8-hour work day, and that she could stand and walk for less than an hour during an 8-hour work day. [*Id.*]. Dr. Ungar-Sargon opined that Ms. P would have manipulative limitations with her

7

hands and fingers, and that she would struggle with reaching and fine manipulations. [DE 13 at 1449].

The ALJ did not explain what evidence failed to support Dr. Ungar-Sargon's opinion. Dr. Ungar-Sargon's own treatment notes support his opinions, at least in part, and the ALJ failed to discuss how the medical record fails to support the limitations in the opinion. Without specifically discussing the opinion and the medical evidence, the Court cannot be sure that the ALJ properly considered this evidence. While the ALJ noted explicitly that there was "little to no clinical evidence as to manipulative difficulties," the ALJ failed to address specific evidence in the record. [DE 13 at 41-42]. For example, Dr. Ungar-Sargon's treatment notes indicate pain that "radiates to the left hand, right hand, left thumb, index finger, ring finger and little finger." [DE 13 at 1352]. He also noted that she suffered from numbness and tingling in her left arm and toes. [*Id.*]. Another treatment note showed a loss of sensation in her fingers and toes that comes and goes. [DE 13 at 1358]. Furthermore, physical therapy records support Dr. Ungar-Sargon's opinions. At discharge from physical therapy, Ms. P was still incapable of standing for more than fifteen minutes, and she still had moderate lumbar flexion movement loss. [DE 13 at 1031].

The ALJ failed to explain which medical evidence fails to support any particular portion of Dr. Ungar-Sargon's opinion. The ALJ may not ignore an entire line of evidence contrary to her findings. *Zurawski*, 243 F.3d at 888. The ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, but she must at least provide a

8

glimpse into the reasoning behind her analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

The ALJ did not provide any analysis of either Dr. Ungar-Sargon's opinion or how the medical evidence failed to support his opinion. This is a violation of the regulations, and the Court cannot be sure that the ALJ properly considered the evidence. The Commissioner asserts that the ALJ discussed the medical evidence throughout the decision. However, such a listing of the evidence does not qualify as a proper discussion of Dr. Ungar-Sargon's opinion and how the opinion is unsupported by the medical evidence in the record. This error requires remand.

These same errors exist in the ALJ's treatment of the opinions of Dr. Popli. The ALJ did not provide a full analysis of which evidence contradicts the doctors' opinions. The ALJ does not discuss any of the regulatory factors in discussing either opinion. Specifically, with Dr. Popli, the ALJ provides no analysis, but rather simply finds that the opinions are inconsistent with Ms. P's ability to "interact appropriately with her health care providers." [DE 13 at 42]. The ALJ does not explain how the ability to interact with healthcare providers, who she sees infrequently and for treatment only, provides any insight into how Ms. P can interact with and get along with her peers and supervisors in a work setting for eight hours a day. Moreover, the opinion regarding Ms. P's social limitations is only one portion of Dr. Popli's treatment statement, where he also opines that she would be seriously limited in her ability to make occupational

9

adjustments and in understanding, remember, and carrying out complex or detailed jobs. [*Id.*].

Finally, the ALJ provided "some weight" to the opinion of Dr. Devere, the medical expert who completed interrogatories. [DE 13 at 41]. The ALJ found that the "lack of evidence [of focal or neurological deficit] fails to support greater limitations than those assessed herein." [*Id.*]. The ALJ's assertion that Dr. Devere's opinion was consistent with the RFC is not a proper analysis to explain why a non-examining physician's opinion should be given greater weight than the treating physicians. The ALJ failed to discuss the regulatory factors, and she did not properly explain how Dr. Devere's opinion was consistent with the medical evidence in the record. The ALJ failed to properly support her opinion with evidence from the record, and she did not provide the requisite logical bridge from the evidence to her decision and RFC determination.

   **C. Subjective Symptoms and Mischaracterization of Ms. P's Work History**

Once an ALJ decides that the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which she is limited in performing work-related activities. 20 C.F.R. § 404.1529 (b)-(c). In doing so, the ALJ must consider objective medical evidence and "other evidence," which includes statements made by the individual, his daily activities, medications, and other factors concerning functional limitations. *Id.* § 404.1529 (c)(2)-(3). In determining the extent to which the claimant's symptoms affect his capacity to perform basic work activities, the ALJ must consider whether the subjective symptoms

10

"can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* § 404.1529(c)(4).

      The ALJ's findings as to the claimant's allegations of subjective symptoms and credibility are treated deferentially and will only be overturned if "patently wrong" or "lack[ing] explanation or support." *Cullinan v. Berryhill*, 878 F.3d 589, 603 (7th Cir. 2017) (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). "A [subjective symptom] determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Id.*

      Here, the ALJ failed to consider her daily activities as required by the regulations outside of noting at Step Three that Ms. P can cook, clean, conduct household chores, shop in stores, and handle money. [DE 13 at 36]; *see also* 20 C.F.R. § 404.1529(a) ("We will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work."). Ms. P reported that she required reminders to groom and bathe, and that her husband cooked the majority of her food. [DE 13 at 593]. She also testified that although could accomplish light dishes and did laundry, she could only complete laundry once a week, carefully. [*Id.* at 623, 625]. "An ALJ cannot disregard a claimant's limitations in performing household activities." *Moss*, 555 F.3d at 562; *see also Craft,* 539 F.3d at 680 ("[A]ny such testimony about how Craft copes with his daily activities should be considered in the RFC assessment."). The ALJ did not consider how Ms. P managed her

11

daily activities in finding that her ability to complete them contradicted her subjective symptom allegations.

More problematically, the ALJ found that Ms. P's ability to obtain a secondary educational certificate and her ability to work at Burger King and as a meter reader contradicts her subjective allegations of difficulties with concentration, as well as her difficulties with the ability to remember and carry out simple, routine, and repetitive tasks. [DE 13 at 40]. First, Ms. P obtained her secondary educational certificate as a dental assistant in 2010, which is prior to her alleged onset date. [DE 13 at 140]. Moreover, Ms. P stated that she had to repeat courses in order to obtain that certificate. [*Id.*]. The ALJ did not explain why Ms. P's ability to obtain a secondary educational certificate in 2010 is indicative of her ability to concentrate after her alleged onset date in 2014. This is improper.

The ALJ also improperly found that Ms. P's ability to work two separate jobs contradicts her subjective symptoms. Ms. P stated that her Burger King job was too difficult for her both cognitively and physically, and that she had to quit working there due to her difficulties. [DE 14 at 785, 802-03]. The ALJ did not discuss that although Ms. P did previously work at Burger King, she was unable to keep up with the demands of the job and quit that job due to her limitations and impairments. The ALJ may not pick portions of the evidence that support her conclusion, while ignoring related evidence that undermines her conclusion. *Scrogham v. Colvin*, 765 F.3d 685, 698-99 (7th Cir. 2014). The ALJ also mischaracterized Ms. P's ability to perform her current work as a meter reader, which the ALJ failed to acknowledge was a part-time job of three days a month.

[DE 13 at 803]. Without acknowledging Ms. P's infrequent work schedule, the Court cannot be sure that the ALJ properly considered her part-time status in finding that Ms. P's subjective symptoms were not as severe as she alleged. The ALJ's mischaracterization of Ms. P's work history and educational history requires remand.

Ms. P makes several other arguments regarding her subjective symptom allegations, but since the Court is remanding based on errors in the subjective symptom analysis, the Court need not discuss those other arguments at this time. The ALJ will have the opportunity to fully discuss and reevaluate Ms. P's subjective symptom allegations on remand. This is not to say that there are no other errors in the subjective symptom allegations, but the Court need not discuss them when errors are already present in the ALJ's analysis and discussion.

**F. Step Five Analysis**

Finally, Ms. P alleges that the ALJ erred by finding Ms. P could perform work the jobs testified to by the vocational expert. Ms. P. alleges that some of these jobs require work that contradicts the RFC. However, the ALJ relied on the testimony and expertise of the vocational expert. [DE 13 at 43, 172-81]. *See* 20 C.F.R. § 404.1566(e). While Ms. P argues that she could not perform the jobs as presented by the VE, the VE properly explained her reasoning in her responses to the hypotheticals, and she testified that the representative occupations are consistent with Ms. P's limitations and the RFC. For instance, Ms. P asserts that she cannot perform work as an order clerk because it requires decision making, and the ALJ found that Ms. P could not perform work that required decision making. However, the VE testified to following the DOT, which lists

skill levels for each job. [DE 13 at 175]. The order clerk position is listed as an unskilled position, and the regulations define unskilled work as "work which needs little or no judgement to do simple duties that can be learned in a short period of time … [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 404.1568(a). Therefore, the job is consistent with the RFC. The ALJ provided the vocational expert with hypotheticals that included Ms. P's limitations, and the vocational expert testified that the representative occupations were consistent with those limitations. [DE 13 174-76]. The ALJ did not err in relying on the testimony of the vocational expert.

## V.    CONCLUSION

For the reasons stated above, the ALJ failed to support her decision finding Ms. P not disabled with substantial evidence. *See Kastner v. Astrue,* 697 F.3d 642, 646 (7th Cir. 2012); *Scott,* 297 F.3d at 595. Accordingly, the undersigned **RECOMMENDS** that the ALJ's decision denying Ms. P's application for Disability Insurance Benefits and Supplemental Security Income be **REVERSED** be **REMANDED** for further consideration consistent with this Report and Recommendation.

> **NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED** this 25th day of September 2020.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
